**BEATRICE FOODS COMPANY,**
**Plaintiff-Appellant,**

v.

**TSUYAMA MFG. COMPANY, S.S. Kresge**
**Company, and Sate-Lite Mfg. Company,**
**Defendants-Appellees.**

**Nos. 79–1440, 79–1442.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 29, 1979.

Decided Dec. 26, 1979.

As Amended on Denial of Rehearing and
Rehearing In Banc April 10, 1980.

Anthony R. Chiara, Chicago, Ill., for plaintiff-appellant.

Seymour Rothstein, Albert W. Bicknell, Chicago, Ill., for defendants-appellees.

Before SWYGERT and WOOD, Circuit Judges, and ACKERMAN, District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

The sequence of events surrounding this patent infringement suit begins in March of 1972 when the Bureau of Product Safety (BPS) of the Department of Health, Education and Welfare issued a report on bicycle safety reflectors. The report noted the insufficiency of present methods of reflectorization and recognized the need for improvements that would not only make bicycles more visible in the dark but also identifiable as such. At the time of the issuance of the report, the Bicycle Manufacturers Association Safety Code required that bicycles be equipped with white reflectors visible at three hundred feet in the low beam of an automobile headlight. To meet this requirement, most manufacturers attached reflective tape to the front fork or head tube.

In early 1972 the plaintiff-appellant's predecessor, Excel, Inc. (Excel), developed a reflector for side-mounting on the spokes of a bicycle wheel. In conjunction with this development, Excel responded to the BPS report one month later with a lengthy study and report of its own, which recommended the use of a standard Class A cube-corner reflector in this configuration as the best solution then known to the problem identified in the BPS report. At the end of July 1972 Excel, through its consultant, Lindner, filed for a patent on the spoke-mounted configuration, claiming only the tab arrangement for attaching the reflector to the spokes.

* Judge J. Waldo Ackerman of the United States District Court for the Central District of Illinois is sitting by designation.

The class A cube-corner reflector, which reflects light beams back to their source over an operative range of thirty degrees on either side of the horizontal-vertical axis, is a significant improvement over the mirror reflector (e. g., reflective tape), which reflects light beams back to their source only when the source lies on the horizontal-vertical axis. Nevertheless, BPS, on September 22, 1972, issued its proposed regulations for bicycle reflectorization, which required as a solution to the problem identified in its report that a circular band of reflectorized material be applied to each bicycle wheel or tire. These proposed regulations put the bicycle industry on notice that existing methods of reflectorization were no longer acceptable. Excel, however, revised its April 1972 report in October of that year and recommended the "Spok-A-Roo," which was the commercial embodiment of the Lindner patent, as an alternative. In November 1972 a BPS representative visited the Excel plant and witnessed an informal test demonstration. On December 15, 1972, BPS informed Excel that the existence of a blind spot when the light source emanated from beyond the sixty degree operative range rendered the "Spok-A-Roo" inferior to reflectorized wheels or tires. Accordingly, BPS stood by its proposed regulations.

On or about December 20, 1972, Excel's employees, Golden and Kennedy, met to discuss the implications of the proposed regulations. By this time it was clear that their adoption would shut Excel, as a manufacturer of cube-corner reflectors, out of the market. Golden recalled a highway center-line marker used in California that contained reflector cube faces mounted at an angle to the backing material.[1] Golden and Kennedy then disassembled a sample highway marker and mounted its four sections on a backing with a round "Spok-A-Roo" reflector in the center. The result

was a reflector comprising a class A cube-corner lens and a number of tilt-angle lenses. Upon mounting the combination reflector on the spokes of a bicycle wheel, Golden and Kennedy noticed that it reflected light over a much greater operative range and produced a flashing effect each time the rotating bicycle wheel brought the reflector in view. They appeared to have solved the problem. The spoke-mounted combination reflector greatly reduced the blind spot and its flashing signal was a distinctive way to identify a bicycle as such.

Golden and Kennedy immediately telephoned BPS to inform it of their findings and to invite a BPS representative to their plant for a demonstration, which took place on January 5, 1973. Another demonstration at the BPS office followed four days later. Shortly thereafter, BPS agreed to recommend a spoke-mounted combination wide-angle reflector as an alternative to reflectorized wheels or tires. Golden and Kennedy then supplied performance specifications, which were published in the Federal Register of May 10, 1973, as a proposed alternative method of reflectorization.

In April 1973 Golden and Kennedy filed an original patent application on the combination wide-angle lens and an application claiming the combination of a standard class A cube-corner lens mounted with multiple tilt-angle cube-corner lenses on a rotating bicycle wheel. Later in the year, when Golden and Kennedy discovered that the Ford Motor Company had used a similar combination lens on some of its 1968 model automobiles, they abandoned the application on the lens alone and filed a Continuation-in-Part of the combination application. The Continuation acknowledged that the 1968 Ford lens was an embodiment of a prior patent (Heenan & Nagel Patent No. 3,541,606).

1. The standard class A cube-corner lens is constructed by mounting miniscule reflective cubes of plastic at an angle perpendicular to its backing. The tilt-angle cube-corner reflector differs only in the angle at which the reflective cubes are mounted to the backing. The difference in the angle of mounting yields a differ- ence in the angle and direction of reflection. When both kinds of lenses are mounted in combination as a single reflector, the result is a substantially greater operative range of reflection. For this reason, the combination reflector is also termed a wide-angle reflector.

In early 1974 Golden and Kennedy learned that the Schwinn Bicycle Company, assignee of the Heenan and Nagel patent, planned to use spoke-mounted wide-angle combination reflectors on its 1975 model bicycles. Golden and Kennedy then promptly filed a Petition to Make Special, which sought early action on their application in light of the imminent infringement. The Patent Office granted the petition, but later rejected all twenty claims made on the application as obvious in light of the prior art. Golden and Kennedy then amended their application by substituting five new claims. The patent in suit issued, No. 3,887,268, on June 3, 1975, and Beatrice Foods Company (Beatrice), the assignee, initiated this litigation in October of that year.

The defendants-appellees in these consolidated cases are all either manufacturers or sellers of bicycle reflectors that allegedly infringe the Golden and Kennedy patent. The district court, on May 31, 1978, entered a judgment order granting their motions for summary judgment and declaring the Golden and Kennedy patent invalid for obviousness[2] under 35 U.S.C. § 103.

The record in the district court and the briefs of the parties indicate that there is no substantial dispute about the veracity of the facts outlined above. In addition, the trial court had before it all pertinent prior art and test data on the patent in suit. Under these circumstances, the issue of obviousness is one of law and therefore may be decided on a motion for summary judgment. *Centsable Products, Inc. v. Lemelson*, 591 F.2d 400, 402 (7th Cir.), *cert. denied*, 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 52 (1979). Although the plaintiff-appellant raises a number of ancillary fac-

tual issues, none are material to the question of law before the trial court and now before us on appeal.

Section 103 of the Patent Act requires that a patentable invention be nonobvious "to a person having ordinary skill in the art . . . .."[3] Although the question whether an invention or development is obvious avoids precise phrasing, the Supreme Court has provided a framework for courts to apply in determining whether the requirement is satisfied:

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined.

*Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966). Our reading of the memorandum opinion, the relevant patents, and the briefs of the parties indicates that Judge Crowley carefully applied this three-part test.

The first prong of the *Graham* test requires a determination of "the scope and content of the prior art . . . .." *Id.* The prior art discloses: (1) mirror and standard cube-corner reflectors mounted on bicycle wheels (British Patent No. 421,321 (1934); Fike Patent No. 2,344,542 (1944); British Patent No. 979,967 (1965); Lindner Patent No. 3,781,082 (1973)), (2) a tab arrangement for attaching reflectors to spoked bicycle wheels (Lindner Patent No. 3,781,082 (1973)), (3) tilt-angle cube-corner reflectors (Heenan & Nagel Patent No. 3,541,606 (1970)), (4) the combination of tilt-angle and standard cube-corner reflectors in a single reflector unit mounted on an

---

**2.** The trial court, without discussion, rejected the anticipation defense of section 102 of the Patent Act, 35 U.S.C. § 102. However, since the anticipation defense was not raised on appeal, we express no opinion on its applicability to the facts of this case.

**3.** 35 U.S.C. § 103 reads:

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title,

if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

automobile (Heenan & Nagel Patent No. 3,541,606 (1970)), and (5) emission of an intermittent flashing signal of reflected light when a rotating bicycle wheel brings a reflector face within the plane of a light source. (British Patent No. 421,321 (1934); British Patent No. 979,967 (1965)).

*Graham* next requires a comparison of the prior art and the claims of the patent in suit. Beatrice claims a combination wide-angle reflector comprising a standard class A cube-corner lens and a number of tilt-angle cube-corner lenses mounted on the spokes of a bicycle wheel. This combination produces a distinctive flashing effect, which Beatrice claims is more pronounced than the flashing effects produced by the British patents. It is clear to us from the face of this claim (and Beatrice concedes) that each of its structural components was disclosed in the prior art listed above. Nevertheless, the Beatrice claim differs from the prior art in two respects. First, although the prior art discloses the combination reflector, its mounting on an automobile, and the mounting of a standard class A cube-corner reflector on the spokes of a bicycle wheel, the Beatrice claim marks the first claim for mounting the combination reflector on the spokes of a bicycle wheel. And second, Beatrice claims that this configuration, as noted, produces an enhanced flashing effect that identifies a bicycle as such.

The final input in the *Graham* analysis is the "level of ordinary skill in the pertinent art . . . ." *Id.* The trial court found a high level of skill, relying apparently on the numerous patents comprising the prior art. Beatrice asserts error in the consideration of all but the two prior patents that deal with combination or tilt-angle reflectors. The flaw in this assertion is that Beatrice abandoned its original claims on the combination lens. Instead, it sought a patent on the combination of a reflector, a bicycle wheel, and a mode of attaching the former to the latter. The analysis of the level of skill in the art therefore extends well beyond the two patents previously granted on combination or tilt-angle reflectors. The pre-examination search that Beatrice conducted as part of its Petition to Make Special disclosed 214 prior patents significantly related to its claims. Having thus identified this group of patents, Beatrice is hard-pressed to complain that the trial court erred in considering patents other than the two dealing with combination or tilt-angle reflectors.

"Against this background, the obviousness or nonobviousness of the subject matter is determined." *Id.* We begin by simplifying the facts of the case. The combination A-B-C—where A is a bicycle wheel, B is a standard class A cube-corner reflector, and C is a tab arrangement for mounting B to A—is acknowledged as old in the prior art. $B^1$, a variant of B (a combination wide-angle reflector comprising a standard class A cube-corner lens and a number of tilt-angle lenses), is also acknowledged as old in the prior art. The Golden and Kennedy patent is on the combination $A-B^1-C$. Beatrice asserts, and we agree, that this marks the first combination of $A-B^1-C$. Our inquiry therefore narrows to the question whether the substitution of a previously disclosed combination wide-angle lens for a standard class A cube-corner lens tab-mounted to the spokes of a bicycle wheel was obvious to one skilled in the art.

For some time before the alleged invention, manufacturers had mounted class A cube-corner reflectors on bicycles. Excel, in fact, manufactured such reflectors in the form of its "Spok-A-Roo," for mounting on the spokes of bicycle wheels. Tilt-angle cube-corner reflectors were commercially available and combination wide-angle reflectors had been mounted on 1968 Ford automobiles. When BPS indicated that the sixty degree operative range rendered the class A cube-corner spoke-mounted reflector unacceptable, Excel's sales were jeopardized. Under these circumstances, it would be obvious even to a layman to substitute the combination wide-angle lens, which has a greater operative range. To technicians reasonably skilled in the art, as Golden and Kennedy were, the modified configuration must have leaped at them.

In reaching this conclusion, we have also considered Beatrice's assertion that the flashing effect produced by the Golden and Kennedy patent was unexpectedly more pronounced than the effects produced by the prior art and find it lacking in merit. Even assuming the Golden and Kennedy flash was more pronounced than those produced by the British patents, we agree with Judge Crowley that it was clearly not an unexpected result. The inventor Golden conceded that if the 1968 Ford reflectors were mounted on a bicycle wheel an identical flashing signal would be emitted. Furthermore, it is certainly not unexpected that the incorporation of cube faces of greater angular reflectivity than those used in the British patents would result in a more pronounced emission of reflected light as a bicycle wheel rotated. Since the more pronounced effect was not unexpected, Beatrice's strained characterization of the prior art flashing effects as being merely "flickers," is not material. That being so, Beatrice's attempt to raise this factual question does not prevent us from affirming the district court's grant of summary judgment.

After finding the Golden and Kennedy patent invalid for obviousness, the district court went on to discuss its view that the flashing produced by the reflector was not synergistic. Until recently this court's pronouncements on the independent vitality of synergism have been somewhat ambiguous. However, a few months after Judge Crowley issued his opinion, we rendered our decision in *Republic Industries, Inc. v. Schlage Lock Co.*, 592 F.2d 963 (7th Cir. 1979). In view of that case and of Judge Crowley's initial finding of obviousness, his discussion of synergism was surplusage and therefore we do not consider that matter in resolving this case. Accordingly, we affirm the grant of summary judgment entered by the district court.

AFFIRMED.